# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## Case No: 22-13940

―――――――――――――――――

EARLENE McBRIDE,

Appellant/Plaintiff,

vs.

CARNIVAL CORPORATION,

Appellee/Defendant.

―――――――――――――――――

Appeal from the United States District Court for the
Southern District of Florida
Case No. 1:16-cv-24894-CIV-DPG

## APPELLANT'S CORRECTED INITIAL BRIEF

*Counsel for Appellant*

*Of Counsel to*

Christopher J. Bailey, Esq.
CJBailey@Bailey-Consulting.com
Florida Bar No.:  42625
2700 SW 27th Avenue, Ste. 702
Coconut Grove, FL 33133-3058
Phone:  (305) 495-8514

BILLERA LAW, PLLC
2201 NW Corporate Blvd
Suite 200
Boca Raton, FL 33431
Telephone: (561) 218-4639

## CERTIFICATE OF INTERESTED PERSONS

Appellant certifies that, to the best of her knowledge, the following is a complete list of the trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations having an interest in the outcome of the case or appeal:

1. Acuna, Krista Fowler (counsel for Defendant-Appellee).

2. Bailey, Christopher John (counsel for Plaintiff-Appellant).

3. Becerra, Jacqueline (U.S. District Court Magistrate Judge).

4. Billera, John F. (counsel for Plaintiff-Appellant).

5. Billera Law, PLLC (counsel for Plaintiff-Appellant).

6. Carnival Corporation ["CCL"] (Defendant-Appellee).

7. Colangelo-Trenner, Zak (counsel for Appellee).

8. Dono, Michael John (counsel for Appellee).

9. Evans, Mrs. Alicia (interested person).

10. Gayles, Darrin P. (U.S. District Court Judge).

11. Gutwein, Evan Seth (counsel for Defendant-Appellee).

12. Hamilton, Jerry D. (counsel for Defendant-Appellee).

13. Hamilton, Miller & Birthisel LLP (counsel for Defendant-Appellee).

14. King, James Lawrence (U.S. District Court Judge).

15. Madalon, Joseph Charles (counsel for Plaintiff-Appellant).

C-1

16.    Madalon Law Firm LLC (counsel for Plaintiff-Appellant).

17.    McBride, Earlene (Plaintiff-Appellant).

18.    Nautilus Insurance Company (interested entity).

19.    Simonton, Andrea M. (U.S. District Court Magistrate Judge)

20.    SMS International Shore Operations US, Inc. (interested party).

21.    Sullivan, Elisha M. (counsel for Defendant-Appellee).

22.    Torres, Edwin G. (U.S. District Court Magistrate Judge).

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant EARLENE McBRIDE respectfully requests oral argument.

# **TABLE OF CONTENTS**

Statement Regarding Oral Argument…………………………………………….i

Table of Contents…………………………………………………………..ii

Table of Citations……………………………………………………………iv

Statement of Jurisdiction…………………………………………………...…viii

Statement of the Issues…………………………………………………..1

    1. WHETHER THE TRIAL COURT ERRED IN ADMITTING THE DEPOSITION OF CHARLES FRITZ OVER APPELLANT'S OBJECTION WHEN APPELLEE HAD MADE NO EFFORT TO SATISFY RULE 32(a)(4).

    2. WHETHER THE VERDICT IS INADEQAUTE AS AMATTER OF LAW, WARRANTING A NEW TRIAL.

Statement of the Case…………………………………………………………2

Summary of the Argument……………………………………………...…12

Argument and Citations to Authority………………………………………..13

    I.    Standards of Review……………………………………....…13

    II.    Rule 32 Prohibited Reading Fritz Charles's Deposition To the Jury……………………………………………...……..13

    III.    The Verdict Is Inadequate And Thus Requires A New Trial……….21

Conclusion……………………………………………………………..25

Certificate of Compliance……………………………………………………….26

# TABLE OF CITATIONS

## Caselaw

*Aymes v. Auto. Ins. Co. of Hartford, Connecticut*, 658 So. 2d 1246

   (Fla. 4th DCA 1995)…..………………………………………………23

*Auster Oil & Gas, Inc. v. Stream,* 835 F.2d 597 (5th Cir.1988)…………………..13

*Bolton v. WJV Mississippi, Inc.*, CIV.A. 08-0310-WS-M,

   2011 WL 482817 (S.D. Ala. Feb. 7, 2011)..…………………..…………18

*Broward County Sch. Bd. v. Dombrosky,* 579 So.2d 748

   (Fla. 4th DCA 1991)…..………………………………………………23

*Burger King Corp. v. Mason*, 710 F.2d 1480 (11th Cir.1983)……………………24

*Cabello v. Fernandez-Larios*, 402 F.3d 1148 (11th Cir. 2005)…………………...13

*Collins v. Marriott Intern., Inc.*, 749 F.3d 951 (11th Cir. 2014)…………………24

*Culebra II, LLC v. River Cruises & Anticipation Yachts*, LLC,

   564 F. Supp. 2d 70 (D. Me. 2008)………..…………………………………..16

*Dimick v. Schiedt*, 293 U.S. 474 (1935)………………………………………..22

*Estate of Thompson v. Kawasaki Heavy Indus., Ltd.*, 291 F.R.D. 297

   (N.D. Iowa 2013)..……………………………………………………14

*Fairfield 274–278 Clarendon Trust v. Dwek*, 970 F.2d 990 (1st Cir.1992)………16

*Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415 (1996)……………………..22

*Hagen v. Hatcher*, 35 F.3d 563, 1994 WL 500641 (5th Cir. 1994)………………13

*Hamprecht v. Hamprecht,* No. 2:12–cv–125–FTM–29,

    2012 WL 1367534 (M.D.Fla. Apr.19, 2012)………………………………..20

*Hartman v. United States*, 538 F.2d 1336 (8th Cir. 1976)...……………………...14

*In re Transcon. Energy Corp.*, 683 F.2d 326 (9th Cir. 1982)……………………..16

*Kraese v. Jialiang Qi*, CV417-166, 2020 WL 4016250

    (S.D. Ga. July 16, 2020)…..………………………………………………16, 20

*Kreitman v. Florida Dep't of Corr.*, 4:20CV371-MW/MJF,

    2020 WL 12188711 (N.D. Fla. Nov. 30, 2020)…………………………....15

*McRay v. Peachey*, CIV. A. 06-2794,

    2009 WL 249772 (E.D. La. Feb. 2, 2009)………………………………....23

*Metcalf v. Campbell*, 4:07CV73-RH/WCS,

    2008 WL 11463694 (N.D. Fla. Mar. 19, 2008)………………………...22-23

*Millennium Partners, L.P. v. Colmar Storage, LLC*,

    494 F.3d 1293 (11th Cir. 2007)…………………………………………….22

*Nelson-Salabes, Inc. v. Morningside Development, LLC*,

    284 F.3d 505 (4th Cir. 2002)……………………………………………….19

*Niver v. Travelers Indem. Co. of Il.*, 430 F. Supp. 2d 852 (N.D. Iowa, 2006)……14

*Rozar v. R. J. Reynolds Tobacco Co.*,

    292 So. 3d 1202 (Fla. 1st DCA 2020)………………………………….21-22

*Salomon Constr. & Roofing Corp. v. James McHugh Constr. Co.*,

    1:18-CV-21733-UU, 2019 WL 2107283 (S.D. Fla. Mar. 21, 2019)……….14

*Sanchez v. Hernandez*, 971 So. 2d 944 (Fla. 3d DCA 2007)……………………..23

*Santana v. Mack*, 889 F. Supp. 223 (D.V.I. 1995)……………………………16-17

*Scott v. Sims,* 874 So.2d 21 (Fla. 1st DCA 2004)…………………………………23

*Sentry Indem. Co. v. Peoples*, 856 F.2d 1479 (11th Cir. 1988)…………………...22

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*,

    318 F.3d 592 (4th Cir. 2003)………………………………………...18-19

*Swearingen v. Gillar Home Health Care, L.P.*, 7

    759 F. App'x 322, 324 (5th Cir. 2019)……………………………….…16

*United States v. Int'l Bus. Machines Corp.*, 90 F.R.D. 377 (S.D.N.Y. 1981)…….14

*Watson v. Builders Square, Inc.*, 563 So. 2d 721 (Fla. 4th DCA 1990)……….24-25

*Westminster Cmty. Care Services, Inc. v. Mikesell*,

    12 So. 3d 838 (Fla. 5th DCA 2009)……………………………….…23

*White v. United States*, 8:11-CV-1355-T-33EAJ,

    2013 WL 3422965 (M.D. Fla. July 8, 2013)………………………...……..16

## **Statutes**

Fla. Stat. § 768.74(4)…………………………………………………………...23

**Rules of Procedure**

26(a)(3)(B)……………………………………………………………………17, 18

Rule 32(a)(4)……………………………………………………...………*passim*

Rule 37(c)(1)…………………………………………………………………18


**Tertiary Sources**

7 James Wm. Moore, *Moore's Federal Practice* § 32.24[5] (2006)……………...17

8A RICHARD L. MARCUS, FED. PRAC. & PROC. CIV. § 2146

     (3d ed. 2020)…………………………………………………………………16

11 Charles Alan Wright et al., *Federal Practice and Procedure: Civil* § 2816

     (2d ed. 1995)………………………………………………………...…23

## <u>STATEMENT OF JURISDICTION</u>

This Court is seized of jurisdiction under 28 U.S.C. § 1291 and Fed. R. App. P. 4(a)(4), appellate jurisdiction for final judgments and denials of motions for new trials under Fed. R. Civ. 59.

## STATEMENT OF THE ISSUES

1. WHETHER THE TRIAL COURT ERRED IN ADMITTING THE DEPOSITION OF CHARLES FRITZ OVER APPELLANT'S OBJECTION WHEN APPELLEE HAD MADE NO EFFORT TO SATISFY RULE 32(a)(4).

2. WHETHER THE VERDICT IS INADEQAUTE AS A MATTER OF LAW, WARRANTING A NEW TRIAL.

## STATEMENT OF THE CASE

This appeal from an adverse judgement in a personal injury action turns on two issues: duties imposed by Fed. R. Civ. P. 32; and a legally inadequate verdict.

Appellant/Plaintiff EARLENE McBRIDE ("Ms. McBride") is originally from New York. [DE 280 at 28].  She spent 20 years providing mental and social care services with the New York State Department of Mental Health. [DE 280 at 29]. Thereafter she retired, first to Pennsylvania and then to Florida in 2017, when she married her wife, Alicia Evans. [DE 280 at 9, 20]. Over the course of her career she earned a Bachelor's degree in Human Services and a Master's in Business; and at the time of trial had 80 credits towards a Master's of Divinity. [DE 280 at 28]. She is also a licensed minister. [DE 280 at 32].

In November, 2015, while still living in Pennsylvania,  she and her then fiancé Alicia took a cruise aboard a ship owned by Appellee CARNIVAL CORPORATION ("Carnival").  Ms. McBride was a large woman, weighing 310 pounds, a condition which sometimes caused numbness in her upper left thigh if she remained standing for too long. [DE 280 at 14, 40; DE 281 at 164].  Given the notorious embarkation and disembarkation lines for cruise ships, she asked to use a wheelchair to board when the ship first sailed and to disembark when the ship returned to Miami. [DE 280 at 14-15, 40-42].  However, she walked around the ship with no problems and spent some ten hours walking around the Bahamas

destinations of Nassau and Atlantis on the date during the cruise's port day. [DE 280 at 14-15, 40-42].

Her use of the wheelchair to disembark gave rise to the accident which forms the basis of this personal injury litigation. The disembarkation gangway was apparently somewhat labyrinthine, with ramps which descended, turns, and sections which ascended. One such ascent ramp ended with a small bump or "gap" with the adjoining floor. [DE 281 at 106]. Fritz Charles, the Carnival guest services assistant pushing Ms. McBride, began "hurrying" or "running" up the ramp pushing her in the wheelchair so as to clear the obstacle with speed. [DE 280 at 16, 46; DE 281 at 99]. The front wheels got stuck on the obstacle. [DE 281 at 104-05]. The wheelchair had been moving so fast that Ms. McBride – at 310 pounds – continued up and out of the wheelchair, landing on her knees and then her shoulder. [DE 280 at 16, 46; DE 281 at 93, 96].

The fall was so severe that Fritz Charles himself checked for blood while other personnel on the scene called an ambulance. [DE 280 at 17, 47-48; DE 281 at 93, 94, 97, 98]. Ms. McBride was taken to Jackson Hospital in Miami by stretcher complaining of bilateral knee and hip pain, back pain and shoulder pain. [DE 281 at 136-37]. Jackson x-rayed her knees but otherwise did not treat her other than to recommend ice and heat; it did not perform any MRI's or CAT scans. [DE 280 at 48; DE 281 at 136-37]. She was released and eventually returned to Pennsylvania,

but still complained to her local doctors of right shoulder pain, low back pain, bilateral knee pain and bilateral hip pain. [DE 280 at 50].

Ms. McBride testified that her complaints continued in Pennsylvania but that her doctors would refuse to consider any sources of her complaints besides her weight and degenerative processes. [DE 280 at 50]. At one point she lost 87 pounds, without any relief from her symptoms. [DE 280 at 54]. One doctor gave her physical therapy and "injections" which did not help significantly. [DE 280 at 50, 53, 94]. Otherwise, the Pennsylvania doctors did not provide more in-depth treatment such as physical neurological testing (e.g., a straight leg raise test); and they did not prescribe MRI's. [DE 279 at 10]. Ms. McBride suggested that the continued emphasis on her weight was dehumanizing. [DE 280 at 67].

Carnival's ticket contract imposes a one-year time-for-suit limitation and a Miami forum clause, so Ms. McBride filed suit in November, 2016 in the Southern District of Florida (before she had completed any type of serious treatment). [DE 1]. As of June, 2017, she was living in Florida with Ms. Evans in Tampa. [DE 280 at 9, 99]. In November, 2017 she came under the care of orthopedic spine surgeon Dr. Thomas Roush of West Palm Beach, Florida. [DE 279 at 6; DE 280 at 101].

Dr. Roush undertook objective physical testing which was objectively positive for injuries to the low back, both knees and right shoulder. [DE 279 at 8-10]. He prescribed MRI's for her knees, right shoulder and low back. [DE 279 at

11-12]. These films confirmed bilateral torn menisci in her knees; a torn labrum in her left hip; a torn rotator cuff in the right shoulder; and spondylolisthesis and a torn intervertebral disc at the L5-S1 level causing bilateral encroachment on the sciatic nerves to her legs. [DE 279 at 11-12]. Dr. Roush undertook treatment of the low back and referred her to his colleague Frank McCormick for the knees, hips and shoulder. [DE 279 at 22-23].

In February 2018, Dr. Roush performed a series of surgical procedures including a decompression of the L5-S1 disc and a fusion of the L5-S1 vertebrae ("titanium expandable spacer with bone grafts, then posterior spinal fusion with the screws and rods."). [DE 279 at 17-19]. These procedures provided her a "very good result" with her back and her leg and her buttock. [DE 279 at 19]. The total charges for Dr. Roush's services, the surgical clinics and hardware was $179,843.99. [DE 279 at 20].

Dr. McCormack also recommended five (5) surgical interventions for Ms. McBride: either an arthroscopic repair or joint replacement (patient's choice) at the right shoulder (at a cost of $45,000), each hip ($45,000-$50,000) and each knee ($45,000-$60,000). [DE 279 at 80]. Carnival obtained an order prohibiting Ms. McBride from discussing any of her medical care after July 3, 2019 (the discovery deadline), as of which time these surgeries had not been undertaken. [DE 288 at 15].

Though the case was originally assigned to the Honorable Judge Lawrence King, late in 2021 it was transferred to the Honorable Darrin P. Gayles. [DE 225]. However, while the case was still pending before Judge King the parties had reached an agreement regarding the deposition of Charles Fritz: **if Carnival could not secure his appearance at trial** then the parties would read his deposition. [DE 272-1, p. 3]. To that end the parties had submitted designations and counter designations for his depositions, and objections to those depositions:

> MS. ACUNA [Carnival's counsel]: **If he does not appear, Your Honor.** What we have proposed, Your Honor, is that **if the witness, despite good service, does not appear**, that the parties would stipulate using his designated testimony and we have, in fact, already filed those with the Court in the abundance of caution.

[DE 272-1, p. 3] (emphasis added).

The case came on for a four-day trial commencing February 14, 2022. Carnival admitted negligence but disputed the causation aspect of liability. [DE 288 at 132-33]. As will be shown below, Carnival's defense would rely on the video-taped deposition testimony of Charles Fritz.

The second day of trial Ms. McBride sought to raise an objection to the use of that deposition, but Judge Gayles indicated his preference to deal with that question later:

> THE COURT: Okay. Are we ready to deal with the next witness?

6

> MR. BILLERA: We are. Your Honor, there are a couple of preliminary things. I don't know if you want to deal with them. They are depositions of Fritz Charles, and there is three exhibits they listed that were objected to that we'd like to have heard at some point.
>
> THE COURT: We can do it later. Why don't we proceed with the testimony for now.

[DE 280 at 6]. That same evening the parties went through the textual objections to the deposition designations which the parties had previously submitted and obtained rulings from Judge Gayles. [DE 280 at 196-218]. Carnival never identified any efforts to obtain service of a trial subpoena upon Mr. Fritz or otherwise indicated that it had made any effort to obtain his appearance at trial - Ms. McBride never agreed to use of the deposition without satisfaction of the parties' stipulation and/or Rule 32. [DE 280 at 196-218]. The subject simply never came up.

Therefore, when Carnival asked to read the Fritz deposition the following day, Ms. McBride objected. Carnival responded by misrepresenting to the Court that Ms. McBride had stipulated unconditionally to the reading of the deposition and that such an agreement was implicit in the fact that the parties had gone the textual objections. Judge Gayles agreed without allowing further response from Ms. McBride:

> THE COURT:    So that leaves us now where as far as your witnesses?
>
> MS. ACUNA:    Is the video deposition.
>
> MR. BILLERA:    Your Honor, we object under Rule 32.

THE COURT:      I'm sorry?

MR. BILLERA:    We object under Rule 32.

THE COURT:      To the video deposition?

MR. BILLERA:    Yes, sir.

MS. ACUNA:      They previously stipulated to its use before Judge King on the transcript and we just went through all this exercise last night about objections to deposition designations.

THE COURT:      You had cross-designations and you're now objecting to the use –

MR. BILLERA:    Yes, Your Honor. They can't bring him without first showing that they tried to subpoena him and he is not available. That's clear law and they have the burden of proof to show that before they call a video depo. The fact that we participated in amending this deposition, he is a witness. He is here in Miami. Did they subpoena him? If they did not, he doesn't testify by video. That's clear. Your Honor, I have the law.

MS. ACUNA: They stipulated to the use of the deposition before Judge King. I am happy to take a moment to fine the transcript.

THE COURT: It's not necessary. You will be able to use it. I wouldn't have spent an hour-plus yesterday going through that if it wasn't pretty clear from the record that the parties had agreed to use the deposition testimony.

[DE 281 at 61-62]. Thus was Carnival relieved of its obligations under both its express stipulation and Rule 32 to demonstrate an exception to the rule against the reading of hearsay depositions of non-party witnesses to a jury.

8

The Fritz deposition was significant because from opening argument onward causation was Carnival's only defense – it claimed that there was no evidence other than Ms. McBride's own word that her injuries arose from the accident:

> [R]eally one key, very important question that you will be answering that is the entire case from our perspective, and that is is [sic] there any evidence that the 2015 wheelchair tip and fall was the cause of later treatment that occurred in 2017 and beyond. You will not hear evidence that the wheelchair incident caused treatment that occurred two plus years later. Without that fundamental evidence, it's our position you will be compelled to answer that very fundamental question, no. No, the incident did not cause the later treatment.
>
> Now, remember when it comes to the portion of the puzzle on that very fundamental question, when I say fundamental, it's -- in fact, once we get to that stage in the case and you hear the jury instructions from Judge Gayles, he's also going to then go through with you something called the verdict form. That's the last piece of paper. That's the one that you all have in the jury room with you when you do your deliberations. You're going to go through the questions. And there will only be two questions, and the Number 1 question will be that fundamental, that very first, important one. You won't even get to Number 2 if you decide no, they have not carried their burden of proof to show that the wheelchair incident caused things happening two plus years later. And you will not hear that evidence.

[DE 288 at 133]. Thereafter Charles Fritz testified (via deposition) that he was going up an incline and admitted that he sped up to make it over the "hump" but that when the 310-pound Ms. McBride was falling out of the wheelchair he miraculously

9

caught her with one hand while holding onto the wheelchair with the other and –

while reaching over the wheelchair - slowly lowered her to the ground:

> Q.    Were you speeding up to try to clear over the gap?
>
> A.    Yes, my pace did rise, I believe.  I'm sorry, not really, but my pace did go up, yes.
>
> Q.    Okay. Why were you speeding up?
>
> A.    I was speeding up because the ramp is slanted, so in order to go up a hill you have to speed up. You have to speed up.

[DE 281 at 95].

> Like I said, I had one hand on the wheelchair. Like I had both hands on the wheelchair, then she proceeded to lean over, fall over, then I used one hand, I kept one hand on the wheelchair and my dominant hand on her to proceed her from falling over right here.
>
> At the time a couple of seconds passed and then I slowly released her as much as I can. Once I knew her feet and her knees were on the ground, that's when I released, let her go, and I also kept on one of my hands on the wheelchair to make sure it doesn't fall or tumble on her if the projectory {sic} was, like, you know, going to happen, you never know.

[DE 281 at 99].  Finally, in closing Carnival expressly argued that her injuries could

not have occurred on November 23, 2015 because of how Fritz Charles described

the accident – that he and Ms. McBride were creeping along "like a turtle."

> So, Mr. Fritz's testimony makes complete sense and is quite credible because he described when it came to this idea of he was running with the wheelchair, of a woman,

> with all due respect, at the time weighed approximately
> 310 pounds. Now, Mr. Fritz, as we all have individual
> experiences, whether it's coming off a cruise ship or off
> of an airplane or a train, described that not only was I not
> going fast, he said, it was like a turtle or a snail.

[DE 281 at 166].

Carnival's expert medical witness admitted that at least Ms. McBride's $10,543.59 in medical expenses for the ambulance and treatment at Jackson Memorial were directly caused by the accident. [DE 281 at 169]. Ms. McBride sought entry of a partial directed verdict at the close of the evidence on the issue of expenses for going to Jackson Memorial hospital because there was no dispute that it was reasonable for her to obtain emergency evaluation after the fall. [DE 281 at 125-27]. Carnival opposed that motion and the trial court denied it.  [DE 127].  In what can only be described as gamesmanship, Carnival then stipulated to the jury in closing argument that the jury should, after all, award her those expenses. [DE 281 at 169].

On February 17, 2022 the jury would go on to award those exact damages and nothing more, in its verdict. [DE 254 at 1-2].  It did not award any pain and suffering despite Carnival admitting its fault in the accident and that it was liable for the immediate consequences of the accident. [DE 254 at 1-2].  The trial court entered judgment, technically for Plaintiff, in the amount of $10,543.59 the following day. [DE 256].

11

Ms. McBride timely moved for new trial on March 18, 2022, arguing that the erroneous admission of the Charles Fritz deposition and the inadequate verdict (among other reasons) warranted relief. [DE 267].  Carnival opposed the motion. [DE 272]. However, the Court below would not address any of the parties' arguments.  Rather, on October 25, 2022 it entered a "paperless order" (email only) which reads, in its entirety:

> 10/25/2022 283  PAPERLESS ORDER denying 267 [sic] Plaintiff's Motion for New Trial. The Court's trial rulings were correct, and the jury's verdict was consistent with the evidence and the law. Signed by Judge Darrin P. Gayles (DPG) (Entered: 10/25/2022)

[DE 283].

Ms. McBride timely perfected this appeal from that order on November 22, 2022.

## SUMMARY OF THE ARGUMENT

Ms. McBride's position on appeal is succinct:  the district court prejudicially abused its discretion by admitting the deposition of Charles Fritz without any attempt by Carnival to satisfy either Rule 32(a)(4) or the parties pre-trial stipulation; and the failure of the jury to award any pain and suffering damages rendered the verdict inadequate which requires a new trial as a matter of law.

## <u>ARGUMENT AND CITATIONS TO AUTHORITY</u>

### I.    Standards of Review

A)    A district court's decision on whether or not to admit deposition testimony under Rule 32 is reviewed for abuse of discretion. *See Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1160 (11th Cir. 2005).

B)    The standard for determining whether a verdict is so inadequate as to require a new trial is whether it indicates passion, bias or prejudice on the part of the jury. *Hagen v. Hatcher*, 35 F.3d 563, 1994 WL 500641 (5th Cir. 1994); *Auster Oil & Gas, Inc. v. Stream,* 835 F.2d 597, 603 (5th Cir.1988). "This standard provides no mathematical rule by which a trial court can assess a jury verdict in order to determine its adequacy or inadequacy. Each case must be decided on its own facts[.]" *Hagen*, *Id*.

### II.    Rule 32 Prohibited the Reading of Fritz Charles's Deposition to the Jury

Carnival was allowed to read the deposition of Fritz Charles, a non-party, as substantive evidence in its case in chief over Plaintiff's Rule 32 objection.  The district court ruled that Ms. McBride had somehow waived her right to object to use of the deposition by waiting to object until the time Carnival sought to introduce it. That ruling was an abuse of discretion as it violated both Rule 32 and the parties' own stipulation as announced by Carnival on the record:

> MS. ACUNA [Carnival's counsel]: **If he [Fritz] does not appear, Your Honor.** What we have proposed, Your Honor, is that **if the witness, despite good service, does not appear**, that the parties would stipulate using his designated testimony and we have, in fact, already filed those with the Court in the abundance of caution.

Foremost, Ms. McBride was under no obligation to object to the use of the deposition until it was actually offered at trial. "[W]hether a party may offer witness's deposition testimony in lieu of live testimony, **is to be determined as of the time at which the witness is called at trial.**" *Salomon Constr. & Roofing Corp. v. James McHugh Constr. Co.*, 1:18-CV-21733-UU, 2019 WL 2107283, at *2 (S.D. Fla. Mar. 21, 2019) (emphasis original). *See also Estate of Thompson v. Kawasaki Heavy Indus., Ltd.*, 291 F.R.D. 297, (N.D. Iowa 2013) (noting that assertions that witness would be unavailable were "'premature,' because we will not know if these conditions obtain at the time that [the witness's] deposition is offered until the deposition is, in fact, offered.") (citation omitted); *Niver v. Travelers Indem. Co. of Il.*, 430 F. Supp. 2d 852, 866 (N.D. Iowa, 2006) (citing, *inter alia, Hartman v. United States*, 538 F.2d 1336, 1345 (8th Cir. 1976)); *United States v. Int'l Bus. Machines Corp.*, 90 F.R.D. 377, 383 (S.D.N.Y. 1981) (although, in protracted litigation, "the time at which the deponent's location should be examined should extend beyond the time of offering," that examination was still limited to "any time during presentation of proponent's case when a trial subpoena could have been served.").

Rule 32(a)(4)[1] of the Federal Rules of Civil Procedure governs the use of depositions of non-parties as substantive evidence. *Kreitman v. Florida Dep't of Corr.*, 4:20CV371-MW/MJF, 2020 WL 12188711, at *2 (N.D. Fla. Nov. 30, 2020) For a deposition to be read as substantive evidence, Rule 32 **must** be satisfied. *Id.*

---

[1] It provides, in pertinent part:

**Rule 32. Using Depositions in Court Proceedings**

(a) Using Depositions.

***

(4) *Unavailable Witness.* A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:

(A) that the witness is dead;

(B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition;

(C) that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment;

(D) that the party offering the deposition could not procure the witness's attendance by subpoena; or

(E) on motion and notice, that exceptional circumstances make it desirable--in the interest of justice and with due regard to the importance of live testimony in open court--to permit the deposition to be used.

Fla. R. Civ. P. 32(a)(4).

("However, if the deponent is a non-party, she **must** be unavailable for the deposition to be used for any purpose other than for impeachment or another purpose allowed by the Federal Rules of Evidence. Fed. R. Civ. P. 32(a)(4).") (emphasis added). "'The restrictions imposed by Rule 32 make it clear that the federal rules have not changed the long-established principle that testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness is not available to testify in person.' 8AFed. Prac. & Proc. Civ. § 2142 (3d ed.)." *White v. United States*, 8:11-CV-1355-T-33EAJ, 2013 WL 3422965, at *2 (M.D. Fla. July 8, 2013). "If it is desired to use the deposition of a person other than an adverse party for substantive evidence ... the conditions of Rule 32(a)(4) **must** be satisfied." 8A RICHARD L. MARCUS, FED. PRAC. & PROC. CIV. § 2146 (3d ed. 2020) (emphasis added).

The burden to establish that a provision of Rule 32 allows the reading of a deposition rests squarely on its proponent. *Swearingen v. Gillar Home Health Care, L.P.*, 759 F. App'x 322, 324 (5th Cir. 2019); *Fairfield 274–278 Clarendon Trust v. Dwek*, 970 F.2d 990, 995 (1st Cir.1992); *In re Transcon. Energy Corp.*, 683 F.2d 326, 330 (9th Cir. 1982); *Kraese v. Jialiang Qi*, CV417-166, 2020 WL 4016250, at *2-3 (S.D. Ga. July 16, 2020); *Culebra II, LLC v. River Cruises & Anticipation Yachts*, LLC, 564 F. Supp. 2d 70, 79–80 (D. Me. 2008); *Santana v. Mack*, 889 F.

Supp. 223, 226 (D.V.I. 1995); 7 James Wm. Moore, *Moore's Federal Practice* § 32.24[5] (2006).

At trial, Carnival conceded that it took no steps to subpoena Charles Fritz and had no idea whether he was available.  However, it and the district court agreed - not that Carnival had complied or could comply with Rule 32 - but that Plaintiff waived the opportunity to object by participating in the conference on the parties' objections to the designation of deposition excerpts (the district court took particular exception to the fact that it had spent an hour on the objections after trial the night before). This was an abuse of discretion.

The timing of objections to the use of depositions under Rule 32 is governed by Rule 26(a)(3)(B).  At the time the parties designated excerpts from and made objections to the Charles deposition Defendant still had Charles listed as a witness it would call live at trial, [DE 138], as did Plaintiff.  [DE 122-3].  The obligation to object to the use of a deposition at trial arises only when the adverse party files a Rule 26(a)(3) Pre-Trial Disclosure identifying its witnesses who will be called by deposition, which disclosure "**must be made at least 30 days before trial**." Fed.R.Civ.P. 26(a)(3)(A), (B) (emphasis added).  Only then does the obligation arise for the adverse party "[w]ithin 14 days after [the disclosures] are made,..  to serve and promptly file a list of… any objections to the use under Rule 32(a) of a deposition designated by another party[.]"  Fed.R.Civ.P. 26(a)(3)(B).  If no such

objection is made, then and only then does that adverse party "waive[]" "an objection not so made." *Id*.

Which brings up the crucial point: Carnival did not make a Rule 26(a)(3)(A) disclosure that it intended to call Fritz by deposition until March 7, 2020 [DE 186] (Defendant's *Second Amended Witness List*). This was only **two (2) days before trial** then set for March 9, 2020, *see* [DE 165] (*Scheduling Order*); and **forty (40) days after the Court-imposed January 26, 2020 deadline to file the Pre-Trial Stipulation**. [DE 165] at 3. This disclosure was patently untimely. In other words, Carnival's Rule 26(a)(3) disclosure that it would read Fritz Charles's deposition was a nullity because it was filed untimely, without leave of court. *See Bolton v. WJV Mississippi, Inc.*, CIV.A. 08-0310-WS-M, 2011 WL 482817, at **3-5 (S.D. Ala. Feb. 7, 2011) (party waived opportunity to move *in limine* against expert opinions by waiting until one week after the court-ordered deadline to submit its challenge); Rule 37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").[2] As such, Ms. McBride had neither

---

[2] The very language of Rule 37(c)(1) offers only the two exceptions to the general rule excluding evidence that a party seeks to offer but has failed to properly disclose—when the failure to disclose is substantially justified and when the nondisclosure is harmless. The burden is on the non-disclosing party to show harmlessness or justification. *Southern States Rack & Fixture, Inc. v. Sherwin-*

obligation nor 14-day opportunity to object to the use of the deposition under Rule 32; the exclusion of testimony and information was a proper sanction in connection with a Rule 26(a) violation. *See Nelson-Salabes, Inc. v. Morningside Development, LLC*, 284 F.3d 505, 512, fn. 10 (4th Cir. 2002) (Fourth Circuit held district court did not abuse its description when it excluded some of defendant's evidence as a sanction for untimely disclosure).

Admission of the Fritz deposition was unduly prejudicial as he profoundly contradicted Ms. McBride's account of the accident. Whereas Ms. McBride and Ms. Evans both testified that she was thrown from the wheelchair going at speed down an inclined ramp, Fritz testified that he was going uphill "like a snail", that somehow Ms. McBride magically flew up and out of the wheelchair and that he magically caught this 310-pound woman by her shirt with one hand, stopped her forward progress, and then only gently dropped her to the ground. Carnival then argued in closing argument that the force of that "gentle" fall could not possibly have injured her. The jury should have been allowed to see and hear Fritz tell his story of super-human strength & leverage and to assess his credibility: "[t]he Federal Rules of Civil Procedure likewise display a 'decided preference for live testimony in open

---

*Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). Needless to say, Defendant made no showing of a Rule 37 exception to justify admission of the Fritz deposition.

court.'" *Hamprecht v. Hamprecht,* No. 2:12–cv–125–FTM–29, 2012 WL 1367534,

at *2 (M.D.Fla. Apr.19, 2012) (citation omitted).

> The Federal Rules of Civil Procedure provide explicit guidance on when deposition testimony may be used in lieu of live testimony: Rule 32 expressly governs "[u]sing [d]epositions in [c]ourt [p]roceedings." Fed. R. Civ. P. 32. Before examining the specific application of the Rule, it is important to note that "live witness testimony is axiomatically preferred to depositions...." *McDowell v. Blankenship*, 759 F.3d 847, 852 (8th Cir. 2014); *see also, e.g., Banks v. Yokemick*, 144 F. Supp. 2d 272, 288 (S.D.N.Y. 2001) ("The general rule is that testimony at all trials must be live."); *Bobrosky v. Vickers*, 170 F.R.D. 411, 413 (W.D. Va. 1997) ("Rule 32 assumes that under normal circumstances the deposition of a witness will *not* be used at trial in lieu of that witness's live testimony."); *cf. Napier v. Bossard*, 102 F.2d 467. 469 (2d Cir. 1939) ("The deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand."). **Given the clear preference for live testimony, the party seeking to substitute deposition bears the burden of establishing the exception**. *See, e.g., Swearingen v. Gillar Home Health Care, L.P.*, 759 F. App'x 322, 324 (5th Cir. 2019) ("The party who wishes to use the deposition has the burden of showing the unavailability of the witness." (citation omitted)).

*Kraese*, 2020 WL 4016250, at *3 (footnote omitted, bold emphasis added).

Ms. McBride was under no obligation to object to the reading of the Charles

deposition until the time that the deposition was offered.  She respectfully submits

that the district court's finding of waiver contradicts Rules 26 and 32; that the

admission of the Fritz deposition constitutes a prejudicial abuse of discretion, and that she is therefore entitled to a new trial.

### III.    The Verdict Is Inadequate And Thus Requires A New Trial

The jury awarded Plaintiff economic damages flowing immediately from the fall (emergency room care, ambulance charges, etc.) but did not award any non-economic damages such as pain and suffering.  The verdict is therefore inadequate as a matter of law and requires a new trial on damages.

> [T]he evidence must support a jury's zero-dollar award for it to stand. And where "the evidence is undisputed or substantially undisputed that a plaintiff has experienced… pain and suffering as a result of an accident, a zero award for pain and suffering is inadequate as a matter of law." *Ellender v. Bricker*, 967 So. 2d 1088, 1093 (Fla. 2d DCA 2007) (quoting *Dolphin Cruise Line, Inc. v. Stassinopoulos*, 731 So. 2d 708, 710 (Fla. 3d DCA 1999)). In *Ellender*, for example, the Second District considered a situation where doctors testified that the plaintiff suffered back, neck, shoulder, and headache pain from his accident-related injuries. *Id*. at 1092 Although the plaintiff had suffered a prior lower back injury that could have contributed to his pain, he didn't have a preexisting neck issue. *Id*. The jury found that the plaintiff had suffered injuries requiring post-accident treatment and pain management and yet awarded no past noneconomic damages. *Id*. at 1093. Under those circumstances, then-Judge Canady wrote that the zero-dollar noneconomic verdict had to be reversed: "the jury's failure to award even nominal past noneconomic damages was not supported by the weight of the evidence and must be reversed." *Id*. (quoting *Allstate Ins. Co. v. Campbell*, 842 So. 2d 1031, 1034-35 (Fla. 2d DCA 2003)); *see also Ramey v. Winn Dixie Montgomery, Inc.*, 710 So. 2d 191, 193 (Fla. 1st DCA 1998) (finding a zero-damages award to be unreasonable in view of the evidence).

***

> We thus reverse and remand the order denying the motion for additur or new trial as to the past pain and suffering award.

*Rozar v. R. J. Reynolds Tobacco Co.*, 292 So. 3d 1202, 1207 (Fla. 1st DCA 2020).

"The trial judge in the federal system…has ... discretion to grant a new trial if the verdict appears to [the judge] to be against the weight of the evidence. This discretion includes overturning verdicts for excessiveness and ordering a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 433 (1996); *see also Dimick v. Schiedt*, 293 U.S. 474 (1935) (recognizing that remittitur withstands Seventh Amendment attack but rejecting additur as unconstitutional such that the only remedy for an inadequate verdict is a new trial). "[T]he court has power to act upon a motion to set aside the verdict of a jury because inadequate or excessive, and in its discretion to grant or deny a new trial. *New York C. & H. Railroad Co. v. Fraloff*, 100 U.S. 24 []; *Wilson v. Everett*, 139 U.S. 616, 621 []; *Lincoln v. Power*, 151 U.S. 436 []." *Dimick*, 293 U.S. at 488 (Stone, J. dissenting). "A district court in its discretion may set aside an excessive or inadequate jury verdict and order a new trial." *Sentry Indem. Co. v. Peoples*, 856 F.2d 1479, 1481 (11th Cir. 1988); *see also Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1303 (11th Cir. 2007). "A federal court may grant a new trial because of an inadequate verdict, but it may not increase the damages above those awarded by

a jury, either directly or by use of an additur." *Metcalf v. Campbell*, 4:07CV73-RH/WCS, 2008 WL 11463694, at *4 (N.D. Fla. Mar. 19, 2008) (quoting 11 Charles Alan Wright et al., *Federal Practice and Procedure: Civil* § 2816, at 172 (2d ed. 1995).

In a personal injury action where liability is established, an award of medical bills without even a nominal award of pain and suffering is inadequate as a matter of law and requires a new trial on damages. *McRay v. Peachey*, CIV. A. 06-2794, 2009 WL 249772, at *10 (E.D. La. Feb. 2, 2009); *Westminster Cmty. Care Services, Inc. v. Mikesell*, 12 So. 3d 838, 841–42 (Fla. 5th DCA 2009); *Sanchez v. Hernandez*, 971 So. 2d 944, 945 (Fla. 3d DCA 2007); *Scott v. Sims,* 874 So.2d 21, 22 (Fla. 1st DCA 2004); *Broward County Sch. Bd. v. Dombrosky,* 579 So.2d 748, 49–50 (Fla. 4th DCA 1991). *See also*, *e.g.*, Fla. Stat. § 768.74(4) (Florida's additur statute). "[W]e conclude that the denial of any damages for pain and suffering, despite uncontradicted evidence of pain and the award of all of her medical expenses, resulted in an inadequate verdict as a matter of law." *Aymes v. Auto. Ins. Co. of Hartford, Connecticut*, 658 So. 2d 1246, 1247 (Fla. 4th DCA 1995).

Such is the case at bar. That Ms. McBride fell to the ground from the wheelchair incurring immediate pain and suffering and requiring immediate medical attention was undisputed, and Carnival admitted liability therefore in closing argument.  Its own doctor testified that Ms. McBride suffered soft tissue injuries that

required medical treatment. Yet, the jury awarded her only the economic damages immediately ensuing the accident, without awarding her any pain and suffering. Such a verdict cannot stand.

The situation was exacerbated by the fact that the district court denied Ms. McBride's motion for directed verdict on these precise damages. On February 16, 2022, after the close of Carnival's case, Ms. McBride moved for directed verdict on the 'immediate damages.' Carnival opposed the motion, and the Court denied it. Yet, that same day in closing argument Carnival told the jury that they **should** award the immediate damages. This allowed the jury to compromise by awarding Plaintiff only the 'immediate damages' without either giving a defense verdict or awarding all of Ms. McBride's damages. While a not a true "compromise" in the sense that only the causation aspect of liability was contested, the verdict never-the-less shows that the jury considered matters outside the evidence in reaching its conclusion. "[A] jury verdict influenced by an improper compromise cannot stand and a complete new trial is required[.]" *Collins v. Marriott Intern., Inc.*, 749 F.3d 951, 962 (11th Cir. 2014) (quoting *Burger King Corp. v. Mason*, 710 F.2d 1480, 1488 (11th Cir.1983)).

> We reverse and remand for a new trial as to the issue of damages. We find that only a jury of unreasonable persons would not have compensated Mrs. Watson for her pain and suffering, loss of earning capacity and future medical expenses. We can only conclude that the jury failed to consider all the elements of her damages. See *Griffis v. Hill*, 230 So.2d 143 (Fla.1970). As we

> stated in *Calloway v. Dania Jai Alai Palace, Inc.*, 560 So.2d 808 (4th DCA 1990) (quoting *Rivera v. Aldrich*, 538 So.2d 1390, 1392 (Fla. 3d DCA 1989)), "it is more than merely conceivable that the jury 'interwove the issues and liability and damages on the jury form in an inconsistent way, suggestive of a compromise on liability, possible confusion on the law of damages, or both.'" *Id*. 560 So.2d at 810.

*Watson v. Builders Square, Inc.*, 563 So. 2d 721, 722 (Fla. 4th DCA 1990).

The failure to grant directed verdict also provided Carnival the unfair advantage of admitting damages already granted by Carnival's own expert and then portraying itself to the jury as being reasonable. Carnival was not being reasonable by "conceding" damages already established by the record. A directed verdict would have placed the parties on even ground. Failure to grant directed verdict on uncontested evidence unfairly prejudiced the Plaintiff and is grounds for a new trial.

## CONCLUSION

WHEREFORE, Appellant/Plaintiff EARLENE McBRIDE respectfully requests this Court to reverse the order denying her motion for new trial and to remand for a new trial.

Respectfully submitted,

By:   *Christopher J. Bailey*

Christopher J. Bailey
Florida Bar No.:    42625
2700 SW 27th Avenue, Ste. 702
Coconut Grove, FL 33133-3058
Phone:  305-495-8514
Email:   cjbailey@bailey-consulting.com

*of Counsel to*

BILLERA LAW, PLLC
*Attorneys for Plaintiff/Appellant*
2201 NW Corporate Blvd., Suite 200
Boca Raton, FL 33431
Telephone: (561) 500-7777

## <u>CERTIFICATE OF COMPLIANCE</u>

I CERTIFY that this document complies with the Federal Rule of Appellate Procedure 32(a)(7)(B) in that it is was prepared using Microsoft Word in a proportionally spaced typeface (Times New Roman, 14-point font) and measures __6,186__ words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).