No. 22-13940

——————————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

——————————————

EARLENE MCBRIDE,

Plaintiff/Appellant,

v.

CARNIVAL CORPORATION,

Defendant/Appellee.

——————————————

On Appeal from the United States District Court
for the Southern District of Florida

——————————————

BRIEF OF APPELLEE
CARNIVAL CORPORATION

——————————————

Krista Fowler Acuña
Michael J. Dono
HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue
Suite 1200
Miami, Florida 33131
305-379-3686

*Attorneys for Carnival Corp.*

*McBride v. Carnival Corp.*
Case No. 22-13940

## Certificate of Interested Persons
## and Corporate Disclosure Statement

## I.    Interested Persons

Carnival certifies that, to the best of its knowledge, the following is a complete list of the trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations having an interest in the outcome of the case or appeal:

1.    Acuña, Krista Fowler (counsel for Defendant-Appellee)

2.    Baily, Christopher John (counsel for Plaintiff-Appellant)

3.    Becerra, Jacqueline (U.S. District Court Magistrate Judge)

4.    Billera, John F. (counsel for Plaintiff-Appellant)

5.    Billera Law, PLLC (counsel for Plaintiff-Appellant)

6.    Carnival Corporation (Defendant-Appellee)

7.    Colangelo-Trenner, Zak (counsel for Appellee)

8.    Dono, Michael John (counsel for Appellee)

9.    Gayles, Darrin P. (U.S. District Court Judge)

10.    Gutwein, Evan Seth (counsel for Defendant-Appellee)

11.    Hamilton, Jerry D. (counsel for Defendant-Appellee)

12.    Hamilton, Miller & Birthisel LLP (counsel for Defendant-Appellee)

*McBride v. Carnival Corp.*
Case No. 22-13940

13.  King, James Lawrence (U.S. District Court Judge)

14.  Law Office of Christopher Bailey (counsel for Plaintiff-Appellant)

15.  Madalon, Joseph Charles (counsel for Plaintiff-Appellant)

16.  Madalon Law Firm LLC (counsel for Plaintiff-Appellant)

17.  McBride, Earline (Plaintiff-Appellant)

18.  Nautilus Insurance Company (interested party)

19.  Simonton, Andrea M. (U.S. District Court Magistrate Judge)

20.  SMS International Shore Operations US, Inc. (interested party)

21.  Sullivan, Elisha M. (counsel for Defendant-Appellee)

22.  Torres, Edwin G. (U.S. District Court Magistrate Judge)

## II.  Corporate Disclosure Statement

Carnival Corporation (NYSE: CCL) discloses that there are no parent corporations or publicly held corporations that hold ten percent or more of Carnival's stock.

Dated:     Apr. 6, 2023     HAMILTON, MILLER & BIRTHISEL, LLP

By:   *s/ Michael Dono*
Michael J. Dono
mdono@hamiltonmillerlaw.com

## Statement Regarding Oral Argument

Appellee Carnival Corp. does not believe oral argument is necessary. The facts and legal analysis are adequately presented in the briefs and record, and the decision process would not be aided by oral argument.

# Table of Contents

Certificate of Interested Persons ...................................................... C1 of 2

Statement Regarding Oral Argument ......................................................... i

Table of Citations ..................................................................... iii

Statement of the Issues.................................................................. 1

Standard of Review ..................................................................... 10

I.    The parties stipulated to use the deposition of Fritz Charles at trial. ................................................................................... 13

II.   The district court did not abuse its discretion in concluding that the jury's verdict was not inadequate, both as a matter of substantive law, and based on the fact that McBride's counsel did not raise this issue before the jury was discharged............................................... 24

  A.    Because McBride did not raise the issue of an inadequate verdict in a timely manner, she cannot receive a new trial. 24

  B.    Adequate evidence supported the award. ............................. 26

Conclusion................................................................................ 33

Certificate of Compliance with Rule 32(a) ............................................. 34

Certificate of Service .................................................................. 35

# Table of Citations

## Cases

*A.L. v. Walt Disney Parks & Resorts U.S., Inc.*,
  50 F.4th 1097 (11th Cir. 2022) ............................................................ 11

*Adams v. Farbota*,
  306 F.R.D. 563 (M.D. Tenn. 2015) ...................................................... 17

*Airstar, Inc. v. Grubbins*,
  668 So. 2d 311 (Fla. 4th DCA 1996) ................................................... 30

*Berryman-Dages v. City of Gainesville Fla.*,
  No. 1:10cv177, 2012 U.S. Dist. LEXIS 47596 (N.D. Fla. Apr. 4, 2012)
  ................................................................................................................ 21

*Bobrosky v. Vickers*,
  170 F.R.D. 411 (W.D. Va. 1997) ............................................. 15, 16, 17

*Burger King Corp. v. Mason*,
  710 F.2d 1480 (11th Cir. 1983) ........................................................... 32

*Daniels v. Weiss*,
  385 So. 2d 661 (Fla. 3d DCA 1980) .................................................... 29

*Davis v. Wal-Mart Stores, Inc.*,
  967 F.2d 1563 (11th Cir. 1992) ..................................................... 29, 30

*Earl v. Norfolk State Univ.*,
  No. 2:13cv148, 2016 U.S. Dist. LEXIS 28932 (E.D. Va. Mar. 7, 2016)
  ................................................................................................................ 17

*Farley v. Nationwide Mut. Ins. Co.*,
  197 F.3d 1322 (11th Cir. 1999) ........................................................... 31

*Flores v. NJ Transit Rail Operations, Inc.*,
  1998 U.S. Dist. LEXIS 23194 (D.N.J. Oct. 30, 1998) ................... 16, 17

iii

*Gill v. Maciejewski*,
    546 F.3d 557 (8th Cir. 2008) ............................................................ 11

*Greer v. Ivey*,
    No. 20-13542, 2022 U.S. App. LEXIS 20423 (11th Cir. July 25, 2022)
    ................................................................................................... 10, 12

*Hernandez v. Walmart Stores, Inc.*,
    No. 21-cv-20861, 2022 U.S. Dist. LEXIS 72469 (S.D. Fla. Apr. 20, 2022)
    ........................................................................................................... 20

*Jackson v. Magnolia Brokerage Co.*,
    742 F.2d 1305 (11th Cir. 1984) ................................................... 11, 26

*Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*,
    772 F.3d 1352 (11th Cir 2014) ........................................................ 10

*Lockard v. Equifax, Inc.*,
    163 F.3d 1259 (11th Cir. 1998) ........................................................ 10

*Mekdeci v. Merrell Nat'l Labs., Div. of Richardson-Merrell, Inc.*,
    711 F.2d 1510 (11th Cir. 1983) ........................................................ 32

*Ortlieb v. Butts*,
    849 So. 2d 1165 (Fla. 4th DCA 2003) .............................................. 28

*Owen v. Angst (In re Angst)*,
    428 B.R. 776 (Bankr. N.D. Ohio 2010) ........................................... 15

*Platypus Wear, Inc. v. Horizonte Ltda.*,
    558 F. App'x. 929 (11th Cir. 2014) ................................................... 25

*Reider v. Philip Morris USA, Inc.*,
    793 F.3d 1254 (11th Cir. 2015) .................................................. 25, 30

*Rogers v. S. Star Logistics, Inc.*,
    661 F. App'x 667 (11th Cir. 2016) .................................................... 11

*Sands v. Kawasaki Motors Corp., U.S.A.,*
   513 F. App'x 847 (11th Cir. 2013) ......................................................25

*State Farm Mut. Auto Ins. Co. v. Health & Wellness Servs.,*
   No. 18-23125, 2020 U.S. Dist. LEXIS 17742 (S.D. Fla. Jan. 31, 2020)
   ..............................................................................................................21

*Sykes v. McDowell,*
   786 F.2d 1098 (11th Cir. 1986) ..........................................................11

*Taylor v. Otter Tail Corp.,*
   484 F.3d 1016 (8th Cir. 2007) ............................................................29

*Trowell v. J.C. Penney Co.,*
   813 So. 2d 1042 (Fla. 4th DCA 2002) ................................................27

*U.S. v. Frazier,*
   387 F.3d 1244 (11th Cir. 2004) ..........................................................10

## Statutes

28 U.S.C. § 1291...................................................................................1

28 U.S.C. § 1332...................................................................................1

28 U.S.C. § 1333...................................................................................1

## Rules

Fed. R. Civ. P. 29(a) ..........................................................................15

Fed. R. Civ. P. 32(a)(4) ......................................................................15

Fed. R. Civ. P. 37(c)(1).......................................................................19

Fed. R. Civ. P. 61 ...............................................................................24

## Statement of Jurisdiction

This Court has jurisdiction over this appeal from a final judgment of the United States District Court for the Southern District of Florida under 28 U.S.C. § 1291. The district court had dual bases for jurisdiction: diversity of citizenship under 28 U.S.C. § 1332, and admiralty jurisdiction under 28 U.S.C. § 1333.

## Statement of the Issues

I.   Did the district court err in admitting the deposition testimony of non-party witness Fritz Charles as substantive evidence, given that Appellant Earline McBride stipulated to its admission and affirmatively designated testimony from the deposition?

II.  The jury heard conflicting evidence of non-economic damages and concluded that McBride did not prove her entitlement to recover such damages. Did the district court abuse its discretion by not granting a new trial where McBride failed to object before the jury was discharged and the jury deliberated without incident to arrive at a decision in which all jurors joined?

## Statement of the Case

## Facts relevant to issue of the use of Fritz Charles' deposition

On November 23, 2016, McBride sued Carnival (Doc 1, Compl.) In her Complaint, she alleged that on November 23, 2015, after disembarking from Carnival's cruise vessel *Ecstasy*, she requested wheelchair assistance. While a Carnival crewmember was pushing the wheelchair, it hit a defect, causing the crewmember to lose control and resulting in McBride falling to the ground. (*Id*. at ¶¶11-14.)

The district court set the trial period to begin on October 21, 2019, and required the parties to submit their pre-trial stipulation by August 30, 2019. (Doc 38, Order.) On August 30, 2019, the parties submitted their joint pre-trial stipulation. (Doc 122, Pre-Trial Stipulation.) In the stipulation, the parties agreed that Fritz Charles was the individual pushing McBride's wheelchair at the time of the incident. (*Id*. at 2-3.) During the discovery phase, Charles was deposed, and both McBride and Carnival jointly designated his deposition testimony for trial purposes. (Doc 161, Notice of Filing Joint Dep. Designations; Doc 161-1, Charles Dep.) Additionally, Charles appeared on both McBride and Carnival's

witness lists (Doc 122-3, Pl.'s Witness List; Doc 122-4, Def.'s Witness List.)

The trial date was postponed multiple times and was ultimately scheduled for calendar call before District Court Judge James Lawrence King on March 6, 2020. (Doc 184, Hr'g Tr.) At the hearing, McBride's counsel stipulated to the reading of Charles' deposition testimony during the trial:

> MS. QUIGGLE: Not on defendant's witness list, but we do have an issue with a fact witness who may or may not appear for trial. He said at his deposition he didn't want to come.
>
> THE COURT: I don't care what people say at their deposition. Have you got a motion? Whose witness list is he on?
>
> MS. QUIGGLE: He's on plaintiff's witness list.
>
> MS. ACUNA:    He's on both parties' witness lists, Your Honor.
>
> THE COURT: All right. What is the man's name?
>
> MS. QUIGGLE: Fritz Charles.
>
> THE COURT: Mr. Charles, okay, whatever his name is.
>
> MS. QUIGGLE: I have subpoenaed him.
>
> THE COURT: You are asking me about whether I should try to find him or bring him in? What do you want me to do? What is the motion?

MS. QUIGGLE: *We have stipulated to deposition designations because he was deposed in this case.*

THE COURT: ….*Your stipulations, that's fine.*

(*Id*. at 27:16-28:8; 28:19) (emphasis added).

The next day, Carnival filed its Second Amended Witness List, which included Charles' testimony by deposition. (Doc 186, Def.'s Second Am. Witness List at 1). McBride did not file any objection to the amended witness list.

The district court initially scheduled the trial to begin on April 21, 2020, but the court cancelled the trial due to the emerging COVID-19 pandemic. (Doc 190, Scheduling Order; Doc 192, Order.) On December 28, 2021, Judge King recused himself from the case (Doc 225, Order.) The case was then reassigned to District Court Judge Darrin P. Gayles, who scheduled the trial to commence on February 14, 2022. (Doc 230.) The trial proceeded as scheduled from February 14-17, 2022. (Doc 244, 249, 250, 253.)

On February 15, 2022, the district court considered both McBride and Carnival's objections to their designated testimony from Charles' deposition. (Doc 280, Trial Tr. at 196:13-218:12.) This occurred on the same trial day that McBride claims she tried to object to using the

deposition. (Appellant's Brief at 6-7.) McBride's counsel, however, did not object under Federal Rule of Civil Procedure 32 during the court's ruling on other objections. Instead, McBride's counsel waited until the following day, when the deposition was to be presented to the jury, to raise an objection. (Doc 281, Trial Tr. at 61:2-22.) During the objection, the court let McBride's counsel make his argument but ultimately overruled the objection, noting that McBride had made cross-designations to the deposition and it was unclear why she would oppose its use. (*Id*. at 62:20-64:5.) Afterwards, Charles gave testimony about the alleged incident in a deposition, which included details about his own physical characteristics as well as those of the other employee involved. (*Id*. at 83-84; 99:13-101:7; 101:19-102:1.) McBride was able to present her deposition designations to the jury for consideration. (*Id*. at 83-113.)

In closing, McBride's counsel argued to the jury that it should not find Charles's testimony credible:

> Now, let's talk a little bit about the evidence. You have two really opposite stories here, two grossly opposite stories. One, is he is pushing, Fritz Charles is pushing her down the ramp, she hits the wheel, goes flying. She is stuck on the ground. An ambulance comes, puts her on a gurney, takes her to the emergency room and they take x-rays of her knees. Why? Because they think she fractured her knees in this accident versus the story that Carnival presented to you, that this man

pushed a wheelchair up or down the ramp, he wasn't really sure, and when he hits the lip and she starts flying forward, one handed he grabs 350 pounds of her and holds her for one minute in one arm, and then slowly lowers her to the ground to where she says she is okay. Those are your competing stories. I think that should make a reasonable person angry that she has to suffer that story. That she has to suffer that humiliation again and again and hear that story. She went flying. It's an all the medical records, she went flying, she hit, she catapulted. And that's what she told the doctors. Look at those records; she got hurt.

(*Id.* at 143:22-144:18.)

## Facts relevant to issue of the adequacy of the damages awarded

After the incident, McBride was taken to the hospital by ambulance, where she underwent x-rays and was discharged with pain medication. (Doc 280, Trial Tr. at 17:12-18:13.) Almost two years later, on November 1, 2017, McBride saw Dr. Thomas Roush for complaints of right shoulder pain, low back pain, and bilateral hip and knee pain. (Doc 279, Trial Tr. at 6:14-7:2.) Dr. Roush performed two surgeries on McBride's back and referred her to Dr. Frank McCormick for her hip, knee, and shoulder complaints. (*Id.* at 16:24-17:2; 19:4-7; 22:3-10.) Dr. McCormick performed no surgery on McBride, but at trial, over six years after the incident, he testified that he recommended a shoulder arthroscopy at an estimated cost of $45,000, surgery on her knees at an estimated cost of $45,000-

$60,000 per knee, and bilateral hip surgery at an estimated cost of $45,000-$50,000 per hip. (*Id*. at 78:24-80:19.) However, neither Dr. Roush nor Dr. McCormick testified that their treatment or recommendations were necessary because of the wheelchair incident.

Carnival called Dr. Mark Sinnreich as an expert witness during the trial. (Doc 280, Trial Tr. at 150:1-9.) Dr. Sinnreich reviewed McBride's medical records from the date of the wheelchair incident and records and imaging studies from before and after the incident. (*Id*. at 156:16-158:21.) He also physically examined McBride and reviewed deposition testimony. (*Id*.) Dr. Sinnreich concluded that the wheelchair incident was a relatively minor trauma that caused only soft tissue injuries. (*Id*. at 151:25-152:7.) He added that these injuries should have resolved within three weeks to three months. (*Id*. at 176:18-178:8.) He also stated that McBride's subsequent medical care, including the surgeries performed by Dr. Roush and the recommendations made by Dr. McCormick, were related to chronic problems that started in 2009, and perhaps earlier. (*Id*.) Dr. Sinnreich opined that future treatments recommended by Dr. McCormick "would be related to the normal aging process or possibly from that [2009] accident where the chair broke." (*Id*. at 178:25-179:7.)

Moreover, Carnival opposed McBride's Motion for Directed Verdict because the question of damages was only for the jury to decide. (Doc 281, Trial Tr. at 127.) The district court agreed, stating, "The motion for directed verdict is denied. It's an issue that will be decided by the jury." (*Id*.) During closing, Carnival argued that McBride had not met her burden of proving that the damages claimed were current and actually incurred by her—Carnival did not stipulate that the jury should award $10,543. (*Id*. at 169.) Carnival insisted these damages could only be awarded if the jury determined that they were proven, which was the same argument it made in opposing McBride's motion for directed verdict. (*Id*. at 169-70.)

McBride's lawyer requested that the jury award his client $575,000 for past and future pain and suffering, $412,820.58 for past medical damages, and $250,000 for future medical damages, totaling $1,237,820.58. (*Id*. at 154:4-22; 155:11-19; 156:3-4.) In contrast, Carnival suggested that the jury award McBride no more than $10,543.59 for her immediate medical attention following the incident (again, only *if* the jury determined that they were proven). (*Id*. at 168:25-170:1.) Carnival argued there was no lasting injury, impairment, disfigurement, mental

anguish, or inconvenience from the soft tissue injury, and that the jury could award zero damages. (*Id*. at 170:23-171:9.)

The jury ultimately awarded McBride $10,543.59 for past medical expenses and zero damages for future medical expenses and past and future pain and suffering, resulting in a total verdict of $10,543. (Doc 282, Trial Tr. at 4:23-5:22; Doc 254, Verdict Form.) The jury was polled and each juror affirmed the verdict. McBride did not object to the verdict's adequacy or request further instructions or deliberations before the jury was discharged. (*Id*. at 6:25-8:10.)

After the jury verdict, the district court entered a final judgment in accordance with the verdict. (Doc 256, Final J.) On March 18, 2022, McBride moved for a new trial, arguing that Charles' deposition testimony should not have been allowed and that the verdict was insufficient because it did not award damages for pain and suffering. (Doc 267, M. New Trial.) Carnival opposed this motion, and McBride was granted an extension of time to file a reply brief but did not ultimately file one. (Doc 272, Resp. in Opp. to Mot. New Trial; Doc 277, Agreed Mot. Extension of Time; Doc 278, Order.) The district court ultimately denied McBride's motion for a new trial.

This appeal follows. (Doc 284, Notice of Appeal.)

## Standard of Review

This Court reviews the denial of a Rule 59 motion for abuse of discretion. *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1267 (11th Cir. 1998). Under the abuse of discretion standard, "deference . . . is the hallmark of" appellate review, and the "district court enjoys 'considerable leeway.'" *U.S. v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (citations omitted). This Court "must affirm unless [it] find[s] that the district court has made a clear error of judgment, or has applied the wrong legal standard." *Id.* at 1259. Put another way, the decision below can be disturbed only if it is "manifestly erroneous." *Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*, 772 F.3d 1352, 1367 (11th Cir. 2014).

Evidentiary rulings, including the admission of deposition testimony, are within the sound discretion of the trial court. *Greer v. Ivey*, No. 20-13542, 2022 U.S. App. LEXIS 20423, at *7 (11th Cir. July 25, 2022). The decision to admit deposition testimony will not be reversed absent a clear showing that the trial court abused its discretion. *See generally A.L. v. Walt Disney Parks & Resorts U.S., Inc.*, 50 F.4th 1097, 1112 (11th Cir. 2022).

Moreover, although a district court may have erred in admitting evidence, such error may be deemed harmless. *Rogers v. S. Star Logistics, Inc.*, 661 F. App'x 667, 670 (11th Cir. 2016) (citations omitted). An error in the admission of evidence is considered harmless if there is sufficient evidence uninfected by any error to support the verdict and the error did not significantly impact the outcome of the case. *Id*. The burden of showing prejudice rests on the objecting party. *See Gill v. Maciejewski*, 546 F.3d 557, 562 (8th Cir. 2008).

And, "[a] court's refusal to grant a new trial on the grounds of inadequate or excessive damages is a matter within the sound discretion of the district court. It should be overturned only in exceptional circumstances." *Sykes v. McDowell*, 786 F.2d 1098, 1105 (11th Cir. 1986). A new trial may be granted only if the court determines that the amount of the verdict is so unreasonable that it shocks the conscience. *See Jackson v. Magnolia Brokerage Co.*, 742 F.2d 1305, 1307 (11th Cir. 1984).

At bottom, *a litigant is entitled to a fair trial but not a perfect one, for there are no perfect trials. Greer v. Ivey*, No. 20-13542, 2022 U.S. App. LEXIS 20423, at *3 (11th Cir. July 25, 2022).

## Summary of the Argument

The district court made the correct decision to reject McBride's motion for a new trial and to issue a final judgment that aligns with the verdict delivered by the jury.

First, McBride asserts that the district court made an error by allowing Charles' deposition testimony to be presented at the trial, and therefore, a new trial is necessary. But, McBride previously stipulated and agreed to accept Charles' deposition testimony instead of his in-person testimony, and her attempt to revoke this agreement during the trial was too late and did not work according to the Federal Rule of Civil Procedure 32. Consequently, Carnival relied on her agreement in good faith, and the deposition testimony did not prejudice McBride because it only disagreed with her account of the incident.

And, even if this Court determines admission of Charles' deposition testimony was improper, the admission constituted harmless error. The deposition testimony was cumulative to other evidence at trial. Furthermore, (1) McBride was able to cross-examine Charles during his deposition, (3) was able to introduce counter-designated portions of his deposition at trial, and (3) failed to request a continuance to protect from

any alleged unfair surprise. McBride, therefore, does not meet her burden in establishing that the admission of Charles' deposition testimony affected her substantial rights, or that the admission of his deposition testimony had any influence in the jury's determination and verdict.

McBride's second argument is no more convincing than her first. First, she waived her right to a new trial by not timely objecting to the alleged inadequacy of the jury verdict. Second, the jury's decision to award $10,543 in damages with no non-economic damages does not indicate inadequacy, but rather reflects McBride's failure to prove her case on damages. The jury's verdict is supported by substantial evidence and does not shock the conscience of the court.

Therefore, the Order denying the Motion for a New Trial should be upheld.

## Argument

## I.    The parties stipulated to use the deposition of Fritz Charles at trial.

McBride's first argument is that the district court made a mistake by allowing the deposition testimony of non-party witness Fritz Charles to be admitted as evidence, despite her objection under Federal Rule of Civil

Procedure 32. However, this argument is unfounded because McBride's counsel had previously agreed in open court that the deposition testimony would be used in place of his live testimony. Any objection raised later by McBride during the trial was simply nothing more than gamesmanship, and was not effective in withdrawing the prior stipulation.

Federal Rule of Civil Procedure 32(a)(4) provides:

> (4) Unavailable Witness. A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:
>
>> (A) that the witness is dead;
>>
>> (B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition;
>>
>> (C) that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment;
>>
>> (D) that the party offering the deposition could not procure the witness's attendance by subpoena; or
>>
>> (E) on motion and notice, that exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used.

Fed. R. Civ. P. 32(a)(4).

Under Federal Rule of Civil Procedure 29, however, parties may modify the traditional requirements of Rule 32 by stipulation. Federal Rule of Civil Procedure 29 provides that "(u)nless the court orders otherwise, the parties may stipulate that: (a) a deposition may be taken before any person, at any time or place, on any notice, and in the manner specified – in which event it may be used in the same way as any other deposition." Fed. R. Civ. P. 29(a). Several courts have found that Rule 29 permits the parties to stipulate to the admissibility of deposition testimony at trial, notwithstanding Rule 32. *See Bobrosky v. Vickers*, 170 F.R.D. 411, 416 (W.D. Va. 1997) (the court "takes the stipulation for its face value" that the depositions could be used as evidence at trial); *Owen v. Angst (In re Angst)*, 428 B.R. 776, 778 (Bankr. N.D. Ohio 2010) (admitting deposition as evidence at trial where the parties agreed, and neither party was prejudiced by the admission); *Flores v. NJ Transit Rail Operations, Inc.,* No. 96-3237, 1998 U.S. Dist. LEXIS 23194, at *13, n.1 (D.N.J. Oct. 30, 1998) (noting that parties can enter into stipulations under Rule 29 to use depositions at trial and avoid Rule 32).

In *Bobrosky*, the defendant in a personal injury action filed a pre-trial motion to admit three deposition transcripts as evidence at trial instead

of live testimony. *Bobrosky*, 170 F.R.D. at 412. One deposition included a stipulation on the record that the deposition was being taken "for the purpose of being read into evidence in Court Proceedings in the above action…" *Id*. at 413. The plaintiff opposed the motion, disputed there was a stipulation to admit the testimony at trial, and arguing that the defendant failed to demonstrate "exceptional circumstances" as contemplated by Fed. R. Civ. P. 32. *Id*. The court agreed there were no "exceptional circumstances." *Id*. at 415. Nonetheless, it found that Federal Rule of Civil Procedure 29 "allows the parties, by written stipulation, to modify the procedures for the taking and use of depositions," and where such a stipulation exists, "the requirements of Rule 32 may be waived." *Id*. at 416. The court further noted that by virtue of such stipulations "depositions of witnesses have in many cases been used at trial in lieu of live testimony," and "their admission at trial has so often not even been an issue that in most instances courts review depositions as substantive evidence without mentioning the manner in which they became part of the record." *Id*. at 416. The court then concluded that the stipulation on the record in the deposition was

sufficient to satisfy Fed. R. Civ. P. 29, and ruled that the deposition could be read into evidence at trial. *Id*.

As the court recognized in *Bobrosky*, it is not unusual or controversial for parties to stipulate to the introduction of a non-party witness's deposition testimony as substantive evidence at trial, as many courts have recognized. *See Flores*, 1998 U.S. Dist. LEXIS 23194 at *13, n.1 ("to avoid the 'hurdle' of Rule 32(a), plaintiff could have sought to enter into a stipulation with defendant for the use of a videotaped deposition at trial pursuant to Rule 29(2)."); *Earl v. Norfolk State Univ.*, No. 2:13cv148, 2016 U.S. Dist. LEXIS 28932, at *4 (E.D. Va. Mar. 7, 2016) ("Indeed, parties frequently agree, either explicitly in a Rule 29 stipulation, or implicitly by the manner in which depositions are taken, to permit their use at trial without objection."); *Adams v. Farbota*, 306 F.R.D. 563, 568, n.7 (M.D. Tenn. 2015) (noting that testimony would be presented in person "(a)bsent special circumstances or the not uncommon agreement of the parties").

It is undisputed that McBride stipulated to the admission of Charles' deposition testimony as substantive evidence in place of his live testimony. During a calendar call on March 6, 2020, McBride raised the

17

issue with the district court, who accepted the stipulation of the parties. (Doc 184, Hr'g Tr. at 27:16-28:8; 28:19.) The record shows that not only did counsel stipulate on the record to the introduction of Charles' deposition into evidence, but McBride also designated the specific testimony from the deposition she wished to introduce. (*Id.*; Doc 161, Notice of Filing Joint Dep. Designations; Doc 161-1, Joint Dep. Designations of F. Charles).

McBride's argument that she did not need to object to the admission of Charles' deposition testimony as substantive evidence is unfounded. According to McBride, Carnival first disclosed its intention to introduce the deposition in its Second Amended Witness List less than 30 days before trial, which was a nullity under Fed. R. Civ. P. 26(a)(3)(A). (Doc 186, Def.'s Second Am. Witness List.) This argument, however, overlooks two crucial facts. First, Carnival filed its Second Amended Witness List the day *after* McBride's counsel stipulated on the record to introducing Charles' deposition instead of live testimony. Second, Carnival filed the list almost two years before the trial! The district court rescheduled the trial to begin on April 21, 2020, more than a month after the Second Amended Witness List was filed. (Doc 190, Order). Ultimately, the trial

did not occur until February 14-17, 2022. (Doc 244, 249-50, 253.) Therefore, McBride's argument that she had neither the obligation nor opportunity to object to using the deposition is simply wrong. Never during the *nearly two years* between filing Carnival's Second Amended Witness List and the trial did McBride file an objection or indicate her intent to withdraw her counsel's stipulation.

McBride's reliance on Federal Rule of Civil Procedure 37(c)(1) is similarly misplaced. That rule states that "(i)f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The rule has no application where, as here, there was no failure to identify Charles as a witness. McBride was clearly aware that he was a witness to the alleged incident, having taken his deposition on April 18, 2019. (Doc 161-1, Charles Dep. at 2). Both parties listed Charles on their respective witness lists with the pretrial stipulation filed on August 30, 2019. (Doc 122-3, Pl.'s Witness List; Doc 122-4, Def.'s Witness List).

Furthermore, even if Carnival's inclusion of Charles' deposition testimony in its Second Amended Witness List, filed nearly two years before trial and after counsel's stipulation, could still be considered untimely as McBride argues, it was both justifiable and harmless. "Substantial justification requires 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request . . . [and] must have a reasonable basis in law and fact.'" *Hernandez v. Walmart Stores, Inc.*, No. 21-cv-20861, 2022 U.S. Dist. LEXIS 72469, at *13 (S.D. Fla. Apr. 20, 2022) (citing *In re Denture Cream Prod. Liab. Litig.*, No. 09-2051, 2012 U.S. Dist. LEXIS 152277 (S.D. Fla. Oct. 22, 2012)). The stipulation of McBride's counsel to introduce the deposition testimony instead of live testimony is undoubtedly a justifiable reason for Carnival's inclusion of Charles' testimony in its Second Amended Witness List.

McBride can also make no reasonable argument that the allegedly late disclosure harmed her. "A failure to timely make the required disclosures is harmless when there is no prejudice to the party entitled to receive the disclosure." *State Farm Mut. Auto Ins. Co. v. Health & Wellness Servs.*, No. 18-23125, 2020 U.S. Dist. LEXIS 17742, at *4 (S.D. Fla. Jan. 31,

2020). "Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *Berryman-Dages v. City of Gainesville Fla.*, No. 1:10cv177, 2012 U.S. Dist. LEXIS 47596, at *6 (N.D. Fla. Apr. 4, 2012).

McBride had ample opportunity to conduct discovery on Charles since she had already taken his deposition. Notably, Charles was included in McBride's witness lists, including her amended ones. (Doc 122-3, Pl.'s Witness List; Doc 166, Pl.'s First Am. Trial Witness List; Doc 167, Pl.'s Second Am. Trial Witness List.) Additionally, McBride jointly submitted Charles' testimony designations, where she also raised objections to Carnival's designated testimony. (Doc 161, Notice of Filing Joint Dep. Designations; Doc 161-1, Joint Dep. Designations of F. Charles). The district court spent over an hour during the trial period addressing these objections, but McBride did not object to using Charles' deposition testimony instead of his live appearance at that time.

McBride claims she was prejudiced by Charles' deposition testimony because it contradicted her own account of how she fell from the wheelchair, and argues that the jury should have been able to assess

Charles credibility in person. (Appellant's Br. at 19). But, the jury already heard Charles' testimony that McBride was too heavy for him and another employee to prevent her fall, and McBride challenged the credibility of Charles' testimony during closing arguments. Further, the fact that Charles' version of events differed from McBride *and* her spouse's testimony does not necessarily imply that she was unfairly prejudiced by it, and more importantly, there is no indication that Charles would have testified differently had he appeared in person at trial.

In essence, McBride's attempt to withdraw her agreement to use Charles' deposition testimony at trial is nothing more than a tactic to gain an advantage. Carnival had every right to rely on the agreement made by McBride, and if she wanted to withdraw that agreement, she could have done so during the two years that passed between the filing of Carnival's Second Amended Witness List and the trial.

Regardless, McBride fails to meet her burden in showing the admission of Charles' deposition testimony constituted more than harmless error. Charles' deposition bears sufficient indicia of reliability to provide the jury with an adequate basis for evaluating its truth.

Charles was administered an oath in his deposition; McBride's counsel had ample opportunity to and did cross-examine Charles; objections were made and preserved for trial; and a transcript was provided. McBride was able to, and did, ensure fairness by designating parts of Charles' deposition not designated to be read by Carnival. McBride cannot contend she could not fully and fairly cross-examine Charles during his deposition. In addition, McBride did not request a continuance due to any alleged unfair surprise nor did she object to the deposition transcript's accuracy or authenticity. Also, independent evidence besides Charles' deposition testimony addressed the mechanics of McBride's fall. McBride herself testified about the fall and so did her spouse. Her physicians further testified on the subject for the jury to consider.

In short, McBride cannot meet her burden to show the admission of Charles' deposition testimony was anything more than harmless error. *See* Fed. R. Civ. P. 61 (providing that errors in the admission of evidence are not grounds for ordering a new trial or otherwise for disturbing a judgment unless the refusal to do so would offend substantial justice). Given the record here, its admission cannot make a new trial necessary. In no way was undue prejudice occasioned. Thus, even if the district court

improperly admitted the deposition into evidence, the error was harmless. As there was no prejudice to the admission of the testimonial evidence, this Court should affirm the district court's denial of the Motion for New Trial.

**II.    The district court did not abuse its discretion in concluding that the jury's verdict was not inadequate, both as a matter of substantive law, and based on the fact that McBride's counsel did not raise this issue before the jury was discharged.**

**A.    Because McBride did not raise the issue of an inadequate verdict in a timely manner, she cannot receive a new trial.**

McBride's argument that the jury's verdict was inadequate is not valid because she did not raise the objection before the jury was discharged. "[A] new trial [is] precluded by the plaintiffs' failure to object to the verdict prior to the jury being discharged." *Platypus Wear, Inc. v. Horizonte Ltda.*, 558 F. App'x. 929, 932 (11th Cir. 2014). In *Reider v. Philip Morris USA, Inc.*, 793 F.3d 1254 (11th Cir. 2015), this Court explained:

> A party must object to a verdict as inconsistent before the jury has been dismissed. Indeed, failure to object to an inconsistent verdict before the jury is excused forfeits the objection. "The reason for this particular raise-it-or-lose-it rule is that if the inconsistency is raised before the jury is discharged, the jury can be sent back for further deliberations to resolve the

> inconsistency in its verdict or interrogatory answers, but once
> the jury is gone that is not possible."

*Id*. at 1259 (citations omitted and quoting *Pensacola Motor Sales, Inc. v. Eastern Shore Toyota, LLC*, 684 F.3d 1211, 1225 (11th Cir. 2012)).

In *Sands v. Kawasaki Motors Corp., U.S.A.*, 513 F. App'x 847 (11th Cir. 2013), this Court affirmed the denial of the plaintiff's motion for new trial on the issue of damages where the plaintiff contended that the verdict was inadequate because the jury had found liability and awarded $3,000,000 in past and future medical expenses, but awarded nothing for pain and suffering. This Court affirmed because the plaintiff did not object to any alleged inconsistency of the jury verdict before the jury was discharged. *Id*. at 857. The challenge to the verdict was waived because the plaintiff did not object to the verdict before the jury was excused. *Id*.

Here, the record shows that after the jury reached its verdict, each member was individually polled, and the court then gave the jurors a summary of their rights before discharging them. (Doc 282 at 5-8.) None of the jurors suggested that they could not reach an agreement, and each claimed the verdict as their own. (*Id*. at 1-8.) The verdict was reasonable and based on the evidence presented at trial. Importantly, McBride did not raise an objection regarding an allegedly inadequate verdict or

request that the district court reinstruct the jury and send them back for further deliberations. (*Id*. at 7-10.) Because McBride's counsel failed to object to the allegedly inadequate verdict before the jury was discharged, the issue was not preserved for appeal, and as a result, McBride's request for a new trial is waived.

### B.    Adequate evidence supported the award.

McBride's argument that the jury's verdict warrants a new trial due to zero damages awarded for pain and suffering, but awarded past medical expenses, lacks merit. A new trial may be granted only if the court determines that the amount of the verdict is so unreasonable that it shocks the conscience. *See Jackson*, 742 F.2d at 1307 . And, a verdict that awards past medical expenses without non-economic damages is not legally inconsistent, as long as the jury reached the verdict based on the evidence presented. *See, e.g., Trowell v. J.C. Penney Co.*, 813 So. 2d 1042 (Fla. 4th DCA 2002) (trial court did not abuse its discretion in not granting new trial despite the jury's decision to award only past medical expenses and nothing for pain and suffering). It is not uncommon for cases to award medical expenses without pain and suffering, and there is

no legal precedent to support the position that an award of medical expenses necessarily implies an award of pain and suffering.

To understand the jury's verdict awarding zero damages for pain and suffering, together with the award of past medical expenses, it is important to view it in the light most favorable to the verdict. Here, there is no substantial, undisputed evidence of pain and suffering caused by the wheelchair accident during the immediate post-accident period for which medical expenses were awarded. McBride's treating physicians, Dr. Roush and Dr. McCormick, did not treat her until two or more years after the accident, and they did not opine that the wheelchair accident caused her back, hip, knee, and shoulder complaints. Furthermore, McBride's pre-accident medical records indicated that she had previously presented with complaints of issues with each of these body parts. Where there is conflicting evidence regarding a claim for pain and suffering, a verdict awarding zero damages is justifiable. This is especially true when the defendant presents evidence of the plaintiff's preexisting medical conditions to challenge the claim. *See Ortlieb v. Butts*, 849 So. 2d 1165, 1167-68 (Fla. 4th DCA 2003).

In contrast, Carnival presented McBride's medical records and objective findings, along with the expert testimony of Dr. Sinnreich, stating that McBride only experienced temporary soreness, tenderness, and bruising from the accident. During closing arguments, Carnival argued that it was reasonable for McBride to seek medical evaluation after the accident, even if she had no injury. Carnival argued that McBride had no pain and suffering, and if the jury felt otherwise, they should award only for the same number of days as the initial assessment period, at the daily rate suggested by McBride. (Doc 281, Trial Tr. at 170:23-171:5.) This is not a case where the evidence of pain and suffering was undisputed or substantially undisputed.

McBride misstates this evidence and Carnival's closing argument. Specifically, it is undisputed that McBride was taken to the emergency room after the fall, that she underwent assessment including x-rays that revealed no traumatic injury, and that she was diagnosed with soft tissue injury. Carnival admitted liability (i.e. the existence of a duty to plaintiff, and the breach of that duty), but never admitted that McBride experienced pain and suffering. Carnival's expert agreed that McBride

experienced soft tissue injury (which he described as temporary soreness, tenderness, and bruising) but did *not* testify as to pain and suffering.

The verdict indicates that the jury found McBride and her spouse's testimony on pain and suffering unconvincing, accepted the defense expert Dr. Sinnreich's opinions, and was persuaded by Carnival's closing argument that McBride had not proven her case regarding pain and suffering. *See Taylor v. Otter Tail Corp.*, 484 F.3d 1016, 1020 (8th Cir. 2007) (determining the amount of damages is within the province of the jury); *see also Daniels v. Weiss*, 385 So. 2d 661, 664 (Fla. 3d DCA 1980) (non-economic damages for pain and suffering are recognized as being largely speculative, and therefore, particularly within the province of the jury). This follows *Davis v. Wal-Mart Stores, Inc.,* 967 F.2d 1563, 1567 (11th Cir. 1992), where the jury's verdict did not conclusively indicate that it accepted a causal relationship between the accident and the complaints. In *Davis*, there was evidence that the pain might have been caused by a pre-existing degenerative condition. *Id*. Also, the jurors might not have accepted the testimony of the plaintiffs' witnesses. *Id*. In conclusion, McBride's claim of an inadequate verdict is unsubstantiated. The evidence does not support her argument that the jury's award of

$10,543 for past medical expenses and zero damages for pain and suffering is inadequate given the record evidence in this case. *See Reider v. Philip Morris USA, Inc.*, 793 F.3d 1254 (11th Cir. 2015) (it is possible that a jury "could have easily decided that [the plaintiff] didn't suffer any damages"). Simply stated, the evidence let the jury reasonably conclude that McBride failed to meet her burden of proving non-economic damages for which Carnival was responsible. *See, e.g., Airstar, Inc. v. Grubbins*, 668 So. 2d 311, 313 (Fla. 4th DCA 1996) (reinstating zero damages verdict where jury could have "concluded that appellee was not injured as a result of the 1991 accident and that any injuries were caused by prior accidents, age-related degeneration, other preexisting conditions or factors unrelated to the 1991 accident").

This Court is therefore wary of disturbing a jury's decision about non-economic damages, especially when there is evidence in the record to support the jury's conclusion. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) ("We have explained that '[t]he standard of review for awards of compensatory damages for intangible, emotional harms is deferential to the fact finder because the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses.'")

(quoting *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 476 (11th Cir. 1999) (internal quotation marks omitted) (emphasis in original)).

Conflicting evidence exists in this case about damages. The medical records admitted into evidence show that McBride's immediate post-accident medical treatment at Jackson Memorial involved evaluation and assessment, but she was not admitted and was released the same day after being diagnosed with soft tissue injury. After returning home to Pennsylvania, she received more evaluation and conservative treatment for one of her knees from local orthopedists at Lancaster Orthopedic Associates, who assessed her with only pre-existing long-term conditions. There was ample evidence that would lead reasonable jurors to believe that McBride incurred limited medical expenses associated with evaluation, assessment, and diagnosis right after the accident, but no pain and suffering due to the lack of any diagnosis of trauma. Therefore, the jury's verdict should be upheld, and McBride's Motion for New Trial was properly denied.

Furthermore, there is no chance for a compromise verdict, as Carnival admitted liability, leaving only causation and damage to be tried. Compromise verdicts occur when damages are compromised in the face

of a liability finding. Here, the jury did not even consider liability. *See Burger King Corp. v. Mason*, 710 F.2d 1480, 1486-87 (11th Cir. 1983) ("A compromise verdict is one where it is obvious that the jury compromised the issue of liability by awarding inadequate damages.").

Nonetheless, a limited damages verdict does not necessarily mean that a verdict is compromised and that a new trial should be granted. Ordinarily there must be other evidence demonstrating that the deficient monetary award resulted from an impermissible compromise. *Mekdeci v. Merrell Nat'l Labs., Div. of Richardson-Merrell, Inc.*, 711 F.2d 1510, 1514 (11th Cir. 1983). Here, there is absolutely no evidence on the record that the damage award was the result of any impermissible compromise. The jury deliberated without ever communicating any difficulty reaching a verdict or asking for further instructions. *Burger King Corp.*, 710 F.2d at 1488 (the record contained no indicia of compromise because the jury obviously was not deadlocked, having never requested additional instructions or tried to qualify its verdict in any manner).

Moreover, McBride's argument that Carnival's opposition to her Motion for Directed Verdict led to the zero award for pain and suffering is baseless. Carnival opposed the Motion for Directed Verdict because the

question of damages was only for the jury to decide. (Doc 281, Trial Tr. at 127.) The district court agreed, stating, "The motion for directed verdict is denied. It's an issue that will be decided by the jury." (*Id*.) During closing, Carnival argued that McBride had not met her burden of proving that the damages claimed were current and actually incurred by her—Carnival did not stipulate that the jury should award $10,543. (*Id*. at 169.) Carnival insisted these damages could only be awarded if the jury determined that they were proven, which was the same argument it made in opposing McBride's motion for directed verdict. (*Id*. at 169-70.)

In short, the district court did not abuse its discretion in concluding that the jury's verdict was not inadequate, both as a matter of substantive law, and because McBride did not raise this issue before the jury was discharged.

## Conclusion

Carnival request this Court affirm the district court's Order denying the motion for new trial and affirm the judgment.

Respectfully submitted,

Dated: Apr. 6, 2023    By:    *s/Michael Dono*
                               Michael J. Dono
                               Florida Bar No. 576492
                               mdono@hamiltonmillerlaw.com
                               Counsel for Appellee Carnival Corp.

## Certificate of Compliance

1.    This Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this Brief contains 6706 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f).

2.    This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14-point Century Schoolbook.

By: *s/ Michael Dono*
Michael J. Dono

## Certificate of Service and Filing

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system. I also certify that the Brief was electronically filed under Eleventh Circuit Rule 25–3 (a) using the Court's Electronic Case File (ECF) System on April 6, 2023.

By: *s/ Michael Dono*
Michael J. Dono